UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHESTER STEVENSON,
      Petitioner,


      v.                                                CIVIL ACTION NO.
                                                    13-11337-IT

THOMAS DICKHAUT,
      Respondent.

**REPORT AND RECOMMENDATION RE:
RESPONDENT'S MOTION TO DISMISS
(DOCKET ENTRY # 37)**

**March 16, 2015**

**BOWLER, U.S.M.J.**

      Respondent Thomas Dickhaut, Superintendent of North Central Correctional Institution ("NCCI"), in Gardner, Massachusetts moves to dismiss the above styled petition for writ of habeas corpus filed under 28 U.S.C. § 2254 ("section 2254"). (Docket Entry # 15). Petitioner Chester Stevenson ("petitioner"), an inmate at NCCI, attacks his January 2010 conviction for: (1) breaking and entering a dwelling in the nighttime with the intent to commit a felony in violation of Massachusetts General Laws chapter 266 ("chapter 266"), section 16; (2) larceny of property over $250 in violation of chapter 266, section 30; (3) operation of a motor vehicle after a suspension of a license in violation of chapter 266, section 23; and (4) failure to stop for a police officer in violation of Massachusetts General Laws chapter 90 ("chapter 90"), section 25.

The five grounds for relief in the petition are as follows:
(1) insufficient evidence that petitioner "broke into the
Meeks['] house and stole property" in violation of due process
(Docket Entry # 22) (ground one); (2) ineffective assistance of
trial counsel under the Sixth and Fourteenth Amendments for not
objecting to the admission of expert or opinion testimony by
Trooper Regina Cameron Bruno ("Trooper Bruno") of the
Massachusetts Department of State Police Crime Scene Services
regarding a comparison between footprints found at the scene and
petitioner's shoes (ground two); (3) denial of due process based
on the prosecutor's closing argument urging "the jury to draw
scientifically indefensible inferences from the footwear
impression evidence" (Docket Entry # 22, pp. 17A & 18A) (ground
three); (4) failure to instruct the jury on the meaning of a
material term regarding breaking and entering "deprived
[petitioner] of his state and federal due process rights" (Docket
Entry # 22, pp. 17A & 18A) (ground four);[1] and (5) error by the
trial court "in denying [petitioner's] Rule 25 motion, because a
conviction on the charge of breaking and entering in the daytime
was more consonant with justice" (ground five).  (Docket Entry #

---

[1]  Although ground four refers to a violation of state law,
any such violation is not subject to federal habeas review.  <u>See</u>
<u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 861 (2011) ("'"federal habeas
corpus relief does not lie for errors of state law"'").

22, pp. 17A & 18A) (Docket Entry # 40).[2]

Respondent seeks to dismiss ground five because it raises only a state law claim. With respect to grounds two and three, respondent maintains they are procedurally defaulted. Respondent moves to dismiss grounds one and two because the rejection of the grounds by the Massachusetts Appeals Court ("the appeals court") was not contrary to or an unreasonable application of clearly established law as determined by the Supreme Court under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).

There is little indication that petitioner seeks an evidentiary hearing. Even if he did, a hearing is not warranted. Before allowing an evidentiary hearing, a federal "habeas judge 'must first consider whether such hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.'" Companonio v. O'Brien, 672 F.3d 101, 112 (1st Cir. 2012) (quoting Teti v. Bender, 507 F.3d 50, 62 (1st Cir. 2007)). The Petitioner "must therefore demonstrate that his allegations would entitle him to relief and that the hearing is likely to elicit the factual support for those allegations." Id.

---

[2] Petitioner elucidates all five grounds in opposing respondent's motion to dismiss. (Docket Entry # 40). In light of his pro se status, this court interprets the grounds for relief presented in the petition (Docket Entry # 22) in a manner consistent with the opposition (Docket Entry # 40).

Here, the record before the state courts is complete. Moreover, petitioner fails to articulate or posit facts that the state court record did not include and that, if elicited at an evidentiary hearing, would provide support for one or more grounds in the petition. In any event, it is inappropriate to conduct an evidentiary hearing and consider new facts not before the state courts when conducting a section 2254(d)(1) analysis. See Garuti v. Roden, 733 F.3d 18, 22 (1st Cir. 2013) ("'review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits'") (quoting Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011)).

PROCEDURAL BACKGROUND

On March 11, 2007, six Indictments issued in Massachusetts Superior Court (Middlesex County) ("the trial court") against petitioner charging him with: (1) breaking and entering into the house of David Meeks in the nighttime in violation of chapter 266, section 16 (Indictment No. 001); (2) breaking and entering into a building, ship, vessel or vehicle in violation of chapter 266, section 16 (Indictment No. 002); (3) larceny of the property of Dimitri Karpouzis ("Karpouzis") having a value exceeding $250 in violation of chapter 266, section 30 (Indictment No. 003); (4) larceny of the property of David Meeks having a value exceeding $250 in violation of chapter 266, section 30 (Indictment No. 004); (5) operating a vehicle after a license suspension in

4

violation of chapter 266, section 23 (Indictment No. 005); and
(6) failing to stop for a police officer in violation of chapter
90, section 25 (Indictment No. 006).

Trial commenced on January 11, 2010.  Prior to impanelment,
petitioner filed a motion in limine to prevent Trooper Bruno from
testifying as an expert regarding footwear impressions taken at
the crime scene.  (Docket Entry # 31, S.A. 97-101).  Reasoning
that a comparison between the impressions and the shoes worn by
petitioner was within the purview of the average layperson, the
trial judge allowed Trooper Bruno to testify about the
measurements at the scene, the dental casting of one of the
impressions and other primary facts.  The trial judge reserved a
ruling about whether Trooper Bruno could offer an expert opinion
about the results of her comparison between the footwear
impressions and petitioner's shoes and directed counsel not to
address the matter during opening statements.

At the close of the Commonwealth's case, petitioner moved
for a required finding of not guilty under Mass.R.Crim.Pro. 25(a)
("Rule 25").  (Docket Entry # 31, S.A. 114-117, 643).  After
hearing argument at the side bar, the trial judge denied the
motion.  On January 15, 2010, a jury convicted petitioner of the
charges in Indictment numbers 001, 004, 005 and 006 and found him
not guilty of the charges in Indictment numbers 002 and 003.
(Docket Entry # 31, S.A. 118-123).  The jury therefore found

petitioner guilty of the larceny charges of David Meeks' property but not Karpouzis' property.

After the jury returned the verdict, petitioner pled guilty to the habitual offender portions of Indictment numbers 001 and 004. (Docket Entry # 31, S.A. 764). The trial judge sentenced petitioner the same day.

On January 20, 2010, petitioner filed a timely motion under Rule 25(b)(2) for a not guilty finding or, in the alternative, a guilty finding on a lesser included offense. (Docket Entry # 31, S.A. 131-136). Relying exclusively on state cases interpreting Massachusetts law, petitioner argued that no rational trier of fact could find that he was present at the crime scene. On February 18, 2011, the trial judge denied the motion.[3]

In May 2012, the appeals court affirmed the judgment. Commonwealth v. Stevenson, 2012 WL 1647863 (Mass.App.Ct. May 11, 2012). The Massachusetts Supreme Judicial Court ("SJC") summarily denied petitioner's application for further appellate review and petitioner subsequently filed this petition.

<u>FACTUAL BACKGROUND</u>[4]

The convictions arise out of an incident that took place in Ashland and Framingham, Massachusetts in February 2007. Facts

---

[3] See footnote six.

[4] Citations to the trial transcripts are provided only for direct quotations.

presented to the jury include the following.

In February 2007, the family of David and Susan Meeks lived at 62 Higley Road in Ashland with their two daughters, Ashley, age 19 at the time, and Caitlyn, age 14 at the time. At approximately 10:00 p.m. on February 9, 2007, David and Susan Meeks returned home from a movie. Upon arriving home, David Meeks parked the car in the couple's garage. To the best of his recollection, he "made an attempt to" close the garage door. (Docket Entry # 31, S.A. 417). Occasionally, the couple had difficulty closing this garage door and the door would "come back up." (Docket Entry # 31, S.A. 417). The next morning, the garage door was not closed.

The garage had a door that went directly into the house. The door was not locked on February 9 and 10, 2007. The couple went into the house and, within an hour of arriving home, Susan Meeks went to bed. David Meeks went to bed "a little bit after" his wife. (Docket Entry # 31, S.A. 418). All four bedrooms in the house are on the second floor.

Before going to bed, David Meeks left his wallet, keys and laptop on a glass table in the kitchen.[5] Susan Meeks left her wallet and purse on a nearby kitchen counter before she went to bed. Her laptop was on a computer stand in a front room of the

---

[5]    Specifically, he testified that his usual practice was to leave these items on the table when he came home from work.

house.

Both Ashley and Caitlyn Meeks were home that evening.
Caitlyn typically left a backpack that she used for school by a
couch in the front room of the house just past the kitchen. She
went to bed around 11:00 p.m. Ashley went to bed around 2:00
a.m. on the morning of February 10.

In the morning, David Meeks came downstairs around 8:00 a.m.
When he went to look for his laptop, he did not see it on the
glass table. He then checked a backpack but the laptop was not
there either. Becoming concerned, he looked for his wife's
laptop but could not locate it. He then woke up his wife and
telephoned the police.

Ashland police officer David Muri ("Officer Muri") arrived
at the house later in the day, parked his cruiser on the street,
walked up the driveway and spoke with David Meeks. After
speaking with David Meeks, he requested a detective to come view
the scene. Sergeant Gregory Fawkes ("Sergeant Fawkes"), an
Ashland police detective at the time, arrived at the scene. He
also parked his cruiser on the street before walking up the
driveway to the house. Officer Muri wears a size ten shoe and
was wearing "standard military styled boots" at the time.
(Docket Entry # 31, S.A. 442). Sergeant Fawkes wears a size 11
shoe and was wearing "[a] pair of Doc Marten boots" at the time.
(Docket Entry # 31, S.A. 499). Neither Officer Muri nor Sergeant

Fawkes walked on the snow covered grass when they arrived at the house.

Sergeant Fawkes "walked through the entire home to check for any signs" of a forced entry. (Docket Entry # 31, S.A. 496-497). He did not see any signs of forced entry and thereafter went to the garage. After observing the open garage door, he "noticed that the garage door was off its tracks." (Docket Entry # 31, S.A. 497).

David Meeks searched the home in the presence of the officers and prepared an inventory of missing items. There were three laptops missing, each valued between $1,500 and $2,000. He also noticed that Caitlyn's backpack was missing. The backpack was a custom order LL Bean backpack. It had a light blue "Hawaiian print with a reflective strip" and her initials, CBM. (Docket Entry # 31, S.A. 419). The backpack contained an iPod, "a Jewish star necklace," a graphing calculator, a zip drive, notebooks, school books and other school material. (Docket Entry # 31, S.A. 430). Several of Caitlyn's notebooks or books were in the driveway on February 10.

While at the house, Officer Muri remembered that a next door neighbor, Karpouzis, who was also a part time patrolman, had a security system on the outside of his house. Officer Muri telephoned Karpouzis and proceeded to walk to his house to view a videotape. Karpouzis lived at 41 Higley Road diagonally across

the street from the Meeks' house.  He had a number of
surveillance cameras outside and inside the house.  One camera
faced the Meeks' house.  The cameras could produce running video
and they "could isolate the day and the time and then either save
images or put them onto a DVD."  (Docket Entry # 31, S.A. 469).
A still picture taken at 1:32 a.m. on February 10 from a camera
over the Karpouzis' driveway showed Karpouzis' vehicle and his
wife's vehicle in the driveway and an individual in the driveway.
A CD of video from the surveillance cameras was admitted into
evidence.[6]  (Docket Entry # 31, S.A. 485-486).  On February 10,
his wife's vehicle was missing two DVD players that hung over the
headrest of each front seat.  Karpouzis estimated that the DVD
players were worth approximately $300.

Officer Muri viewed the videotape and thereafter notified
Sergeant Fawkes about the existence of valuable evidence on the
videotape.  Sergeant Fawkes then came over to Karpouzis' house
and watched the videotape.  After watching the videotape, he
immediately returned to the Meeks' house "to check the rear of
the residence to see if there was any footprints in the snow."

---

[6]  In making a ruling on the Rule 25(b)(2) motion, the trial
judge described the video evidence as "depict[ing] an individual
walking in the direction of the Meeks' home, entering the
driveway area and emerg[ing] from the other side of the house
during the night, i.e., shortly after 1:30 a.m."  (Docket Entry #
31, S.A. 8, 138); see 28 U.S.C. § 2254(e).  She declined to
speculate on the jury's not guilty verdicts on Indictments 002
and 003.

(Docket Entry # 31, S.A. 498-499). He saw "a set of footprints leading from the [Meeks'] driveway to the base of the wooden deck stairs" in the backyard and then further around the back to another road. (Docket Entry # 31, S.A. 499). He also observed shoe impressions in a mulch bed "in front of the windows in the front." (Docket Entry # 31, S.A. 512). Sergeant Fawkes taped off the area and waited for State Police Crime Scene Services to arrive.

David Meeks wears a size 13 or 14 size shoe and did not walk around the house or in the backyard after he came home from the movie or the next day. Ashley and Susan Meeks wear a size seven shoe. Caitlyn Meeks wears a size eight and a half or nine size shoe. None of the family members walked in the front yard near the above noted front windows.

Later in the afternoon, Sergeant Mary Ritchie ("Sergeant Ritchie") and another State Trooper from State Police Crime Scene Services arrived at the Meeks' house. Sergeant Ritchie proceeded to spray paint the shoe impressions at the base of the wooden steps and at the front of the house with red spray wax. She took photographs and made a "dental stone casting of the footwear impression" at the base of the wooden deck stairs. (Docket Entry # 31, S.A. 611).

Meanwhile, on the evening of February 10, Lieutenant Harry Wareham ("Lieutenant Wareham") of the Framingham Police

11

Department was working a shift in Framingham. At around 9:00
p.m., he was parked in an unmarked Ford Explorer in a parking lot
of the Bishop Drive apartment complex in Framingham. He observed
petitioner exit apartment 205 and get into a Ford Taurus. He was
not with anyone else at the time. Petitioner then drove out of
the parking lot and Lieutenant Wareham proceeded to follow him.
Petitioner was traveling at a high rate of speed and Lieutenant
Wareham activated his lights to effectuate a traffic stop.
Petitioner then made a turn at a traffic light, crashed the
vehicle into a tree and fled the scene. Lieutenant Wareham
radioed for assistance to locate petitioner.

Inside the crashed Ford Taurus was a blue Hawaiian print
backpack in the back seat. Lieutenant Wareham removed the
backpack from the vehicle and opened it. Two DVD players were
inside the backpack. Lieutenant Wareham also saw a white Celtics
jacket in the back seat. Karpouzis was summoned to the scene and
identified the two DVD players as the ones that were in his
wife's vehicle. The Framingham Police Department initially took
custody of the backpack. Later that evening or the next day,
David Meeks identified the backpack as his daughter's blue
Hawaiian backpack with her initials.

Approximately 45 to 50 minutes after petitioner crashed the
Ford Taurus, he was located at Tommy's Taxi in Framingham and
arrested. Lieutenant Wareham arrived at Tommy's Taxi and

testified that petitioner was wearing the same clothes and Adidas sneakers he was wearing when driving the vehicle. Rachel Cromwell ("Cromwell"), the registered owner of the vehicle and a resident of 205 Bishop Street in Framingham, was with petitioner at Tommy's Taxi. Lieutenant Wareham testified that on February 12, 2007, Cromwell gave him permission to search the 205 Bishop Street apartment. The search uncovered the necklace with the Star of David. David Meeks identified the necklace in court as his daughter's. (Docket Entry # 31, S.A. 436, 555).

During booking at the Framingham Police Department, Lieutenant Wareham obtained the Adidas sneakers from petitioner. The sneakers were stored at the Framingham Police Department before being taken to the Ashland Police Department and forwarded to the state crime lab.

Trooper Bruno testified about the general process of footwear comparison analysis. She further testified that she analyzed the sneakers at the crime lab "that were submitted for comparison" to the photographs of the footwear impressions and the dental stone casting of one of the impressions.[7] (Docket Entry # 31, S.A. 631-633). She also testified that she "was presented with" the Adidas sneakers and "a photograph of an impression in the snow" taken at the Meeks' house. The

---

[7] Trooper Bruno's testimony is the subject of trial counsel's failure to object to her "expert" testimony and the prosecutor's purported transgression during closing argument.

prosecutor then asked Trooper Bruno to confirm that the photograph was what she "actually used to do [her] comparison." (Docket Entry # 31, S.A. 636). When she answered it was, the trial judge asked to see counsel at side bar where she warned counsel that there should not "be a discussion of comparisons." (Docket Entry # 31, S.A. 636). The prosecutor concluded her direct examination of Trooper Bruno shortly after the side bar. Trooper Bruno did not express an opinion about the results of her comparison or that any such result inculpated petitioner.

During closing argument, the prosecutor addressed "the footprint evidence." (Docket Entry # 31, S.A. 673). She recited the evidence including the dental casting, the photographs and petitioner's sneakers taken during booking. She then asked the jury:

> You have the footprint evidence. Now, you heard from Sergeant Ritchie and Trooper Bruno, Sergeant Ritchie who went to the scene, Detective *Fawkes* who also went to the scene and saw the footprints. You saw where they were. One's in the back of the house and one is in the front of the house. And you learned how they preserved the footprints.
>
> I'm going to ask you to *look at the dental casting taken from the back of the home*. And you can do your own comparison. You learned this is the left shoe imprint, and that this is Mr. Stevenson's shoe. The shoe he was wearing that night, and you can go back there and *do the comparison*.
>
> You don't leave your common sense at the door when you come into this courtroom. You've seen bottoms of shoes before. Is this a coincidence Mr. Stevenson's shoes with the lines here, the indentation down here, the lines here and the indication down here? You can *draw your own conclusions from this shoe*.

And you can do the same thing with the photographs. Take
the shoes, take the overlays, take the casting, do you own
comparison, *and you will conclude those are [petitioner's]
shoes, the shoes he was wearing that night.*

(Docket Entry # 31, S.A. 674) (emphasis added).[8] Petitioner's

trial counsel did not object to the testimony. The prosecutor's

closing argument concluded shortly after she made these

statements. The trial judge charged the jury immediately

thereafter. Near the beginning of the charge, the trial judge

instructed the jury that, "As I've told you several times[,] the

opening statements and the closing arguments by the attorneys are

not evidence." (Docket Entry # 31, S.A. 680).

DISCUSSION

I.  Procedural Default

    Respondent contends that grounds three and four are

procedurally defaulted because petitioner's trial counsel did not

object to the prosecutor's closing argument (ground three) or to

the jury instruction (ground four).

    Ground three asserts a due process violation because the

prosecutor "urged the jury to draw scientifically indefensible

inferences from the footwear impression evidence." (Docket Entry

# 22, pp. 17A & 18A) (Docket Entry # 40, p. 25). According to

petitioner, the prosecutor "improperly argued that the footwear

---

[8]  The italicized portions of the argument are the same
portions of the argument that petitioner emphasizes as improper.
(Docket Entry # 40, p. 29).

impression evidence, standing alone, established that [petitioner] was present at the scene." (Docket Entry # 22, p. 17A) (Docket Entry # 40, p. 25). Petitioner maintains that the prosecutor misstated the evidence and "urged the jury to find that [petitioner's] shoes matched the footprint impressions collected at the scene."[9] (Docket Entry # 40, p. 29).

Because trial counsel did not object to the prosecutor's argument, the appeals court considered whether the "unobjected-to statement in [the prosecutor's] closing did not create a substantial risk of a miscarriage of justice." Commonwealth v. Stevenson, 2012 WL 1647863, at *2 (citing Commonwealth v. Kee, 870 N.E.2d 57, 66 n.11 (Mass. 2007)). The appeals court found no error and, alternatively, "even if the remark was error, its admission does not 'make plausible an inference that the [trial] result might have been otherwise but for the error,' and therefore did not create a substantial risk of a miscarriage of justice." Id. (quoting Commonwealth v. Alphas, 712 N.E.2d 575, 580 (Mass. 1999)).

In ground four, petitioner alleges a denial of due process based on the trial judge's failure to instruct the jury on the meaning of a material term regarding breaking and entering, namely, "how Massachusetts law values property in larceny cases."

_____

[9] Petitioner also recounts a report that was not admitted into evidence as well as the findings of his own expert who did not testify at trial.

(Docket Entry # 40).  Petitioner acknowledges that the trial judge instructed the jury "that [it] must consider whether [petitioner] intended to steal property having a value in excess of $250" but points out that she "gave [the jury] no guidance for assessing the value of the property."  (Docket Entry # 40).

The trial judge instructed the jury that, "You must also determine whether the value of the property that was stolen was worth more than $250" and that "[y]ou need to consider that question with respect to each of the separate indictments." (Docket Entry # 31, S.A. 695).  Here again, trial counsel did not object to the instruction.  As a result, the appeals court reviewed the argument under the miscarriage of justice standard of review that applies to an instructional error where there was no objection.  See Commonwealth v. Stevenson, 2012 WL 1647863, at *2 (citing Commonwealth v. Mercado, 922 N.E.2d 140, 147 n.14 (Mass. 2010)).[10]

A long standing rule bars federal courts from reviewing state court decisions that rest on "independent and adequate state ground[s]."  Trest v. Cain, 522 U.S. 87, 89 (1997). Federal habeas review is therefore "precluded if there is an

---

[10]  As elaborated by the Mercado court, "Because the defendant failed to object to this aspect of the jury instructions, our review is limited to whether the instruction was erroneous and, if so, whether it created a substantial likelihood of a miscarriage of justice."  Commonwealth v. Mercado, 922 N.E.2d at 147 n.14.

independent and adequate state law ground supporting the state court's decision." Lee v. Corsini, 777 F.3d 46, 54 (1st Cir. 2015). "A state procedural rule is *adequate* to preclude federal merits review 'so long as the state regularly follows the rule and has not waived it by relying on some other ground.'" Id. (quoting Jewett v. Brady, 634 F.3d 67, 76 (1st Cir. 2011)) (emphasis added). The First Circuit routinely concludes "'that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts.'" Hodge v. Mendonsa, 739 F.3d 34, 44 (1st Cir. 2013) (applying waiver to theory regarding admissibility of statements); Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010) (noting, with respect to challenged jury instruction, that, "Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts"); Lynch v. Ficco, 438 F.3d 35, 45 (1st Cir. 2006) (applying procedural default to failure to object to jury instruction).

Furthermore, the appeals court's review of the claim under the miscarriage of justice standard "does not amount to a waiver

of the state's contemporaneous objection rule."[11]  <u>Janosky v. St.</u>
<u>Amand</u>, 594 F.3d at 44; <u>accord</u> <u>Gunter v. Maloney</u>, 291 F.3d at 80
("mere fact that a state appellate court engages in a
discretionary, and necessarily cursory, review under a
'miscarriage of justice' analysis does not in itself indicate
that the court has determined to waive an independent state
procedural ground for affirming the conviction").  Consequently,
federal habeas review of petitioner's jury instruction and
prosecutorial misconduct claims is foreclosed unless petitioner
shows cause and prejudice or a fundamental miscarriage of
justice.  <u>See</u> <u>Lee v. Corsini</u>, 777 F.3d at 58 (federal court may
review procedurally defaulted claim if "petitioner demonstrates
cause for the default and prejudice resulting therefrom, or" that
failure to consider "'federal claim will result in a fundamental
miscarriage of justice'"); <u>Janosky v. St. Amand</u>, 594 F.3d at 44-
46.

     As to cause, ordinarily the petitioner must "show that some
objective factor external to the defense impeded counsel's
efforts to comply with the State's procedural rule."  <u>Murray v.</u>
<u>Carrier</u>, 477 U.S. 478, 488 (1986); <u>Lee v. Corsini</u>, 777 F.3d at

---

[11]  As the last reasoned decision, the appeals court is the
relevant decision to review.  <u>See</u> <u>Gunter v. Maloney</u>, 291 F.3d 74,
80 (1st Cir. 2002) (when "last state court decision is an
unexplained order, there is 'a presumption which gives [it] no
effect-which simply "looks through" [it] to the last reasoned
decision'").

58-59. Ineffective assistance of counsel that is "so severe that it violates the Sixth Amendment, may constitute sufficient cause to excuse a procedural default as long as the petitioner exhausted his ineffective assistance claim in state court." Janosky v. St. Amand, 594 F.3d at 44 (citing Murray v. Carrier, 477 U.S. at 488-489). Here, however, petitioner did not exhaust the ineffective assistance of counsel claim regarding counsel's failure to object to the prosecutor's closing argument or to the jury instruction. Rather, he exhausted the ineffective assistance of counsel claim regarding counsel's failure to object to the admission of Trooper Bruno's testimony. Consequently, in order to rely on the ineffectiveness of counsel as "cause" for the procedural defaults in grounds three and four, petitioner "must independently satisfy the cause and prejudice standard with respect to" the ineffective assistance claims. Costa v. Hall, 673 F.3d 16, 25 (1st Cir. 2012). Requiring cause and prejudice for this second level of procedural default vis-à-vis ineffective assistance of counsel avoids "render[ing] the exhaustion requirement 'illusory.'" Id. (quoting Edwards v. Carpenter, 529 U.S. 446, 452 (2000)).

There was no external impediment that prevented trial counsel from objecting to the prosecutor's closing argument or the jury instruction. Simply because trial counsel "'failed to recognize the factual or legal basis for a claim' does not in and

20

of itself 'constitute cause for a procedural default.'"  Costa v.
Hall, 673 F.3d at 25 (quoting Gunter v. Maloney, 291 F.3d at 82
n.2).

Furthermore, even if there were exhaustion, trial counsel's
failure to object to the prosecutor's closing argument was not
ineffectiveness within the meaning of the Sixth Amendment.  As to
ground three, a prosecutor's closing argument is considered in
the context of the entire argument, the jury instructions
regarding the argument and the evidence at trial.  See Darden v.
Wainwright, 477 U.S. 168, 177 (1986) (considering closing
argument as a whole, jury instructions regarding argument and
strength of case); Commonwealth v. McIntyre, 721 N.E.2d 911, 922
(Mass. 1999) (considering remark in context of entire argument,
judge's instructions and evidence at trial); Kirwan v. Spencer,
631 F.3d 582, 588 (1st Cir. 2011) ("'relevant question is whether
the prosecutor's comments "so infected the trial with unfairness
as to make the resulting conviction a denial of due process"'")
(quoting Darden v. Wainwright, 477 U.S. at 181, and omitting
internal brackets).  The ineffective assistance of counsel
standard is "'highly deferential'" and it requires the petitioner
"to 'overcome the presumption that the challenged action might be
considered sound trial strategy.'"  Pena v. Dickhaut, 736 F.3d
600, 605 (1st Cir. 2013) (quoting U.S. v. Rodriguez, 675 F.3d 48,
56 (1st Cir. 2012)); Strickland v. Washington, 466 U.S. 668, 689

(1984) (there is "a strong presumption that counsel's conduct
falls within the wide range of reasonable professional
assistance").  In the case at bar, the prosecutor honed her
argument to asking the jury to do its own comparison and to
conclude from that comparison that the footwear impressions were
those of petitioner's Adidas sneakers.  Objecting to the argument
could have focused the jury's attention on the similarities
between the impressions and petitioner's sneakers to a greater
degree than the evidence already suggested.  Inasmuch as the
failure to object falls within the realm of trial strategy it
lies well within the parameters of effective assistance under the
Sixth Amendment.

        Turning to the failure to object to the jury instruction as
ineffective assistance of counsel under Strickland, the trial
judge culled the language of the instruction from the Criminal
Model Jury Instructions for Use in the District Court (2009).
(Docket Entry # 31, S.A. 655-656).  The trial judge instructed
the jury that it must determine that petitioner had the specific
intent at the time of entry to commit a felony, namely, "the
felony of larceny over $250," and that "he intended to steal
property with a value over $250."  (Docket Entry # 31, S.A. 697-
698).  She also referred the jury to the elements of larceny in
previous instructions.  (Docket Entry # 31, S.A. 697).  Those
elements included a determination that the value of the property

"was worth more than $250." (Docket Entry # 31, S.A. 695).

Massachusetts law allows the jury to determine value using its

common knowledge. See Commonwealth v. Hosman, 154 N.E. 76, 78

(Mass. 1926) (jury could determine value of property as exceeding

certain monetary threshold "[a]s a matter of common experience");

Commonwealth v. McCann, 454 N.E.2d 497, 498 (Mass.App.Ct. 1983)

(citing Loschi v. Massachusetts Port Authority, 282 N.E.2d 418,

419 (Mass. 1972), for principle that "it was open to the jury to

conclude" value of items "was more than one hundred dollars");

Loschi v. Massachusetts Port Authority, 282 N.E.2d at 419 ("jury

may use their general knowledge and experience in evaluating

property"); see also Commonwealth v. Muckle, 797 N.E.2d 456, 466

(Mass.App.Ct. 2003). Consequently, an instruction regarding how

to determine the value of the property was not necessary or

supported by Massachusetts law and trial counsel was therefore

not ineffective by failing to object to its absence.

Failing to establish cause, there is no need to address the

prejudice prong. See Magee v. Harshbarger, 16 F.3d 469, 472 (1st

Cir. 1994) (declining to address prejudice prong "[b]ecause the

cause and prejudice requirement is conjunctive"). Even without

a showing of cause and prejudice, a federal "court may excuse a

procedural default if the petitioner can demonstrate that a

failure to consider his claim will work a fundamental miscarriage

of justice." Janosky v. St. Amand, 594 F.3d at 46; accord Lee v.

<u>Corsini</u>, 777 F.3d at 62. The "exception is narrow and applies only in extraordinary circumstances—circumstances in which a petitioner makes some showing of actual innocence." <u>Janosky v. St. Amand</u>, 594 F.3d at 46; <u>accord</u> <u>Lee v. Corsini</u>, 777 F.3d at 62 (miscarriage of justice exception is "'narrow,'" "'seldom'" used and "'tied to a showing of actual innocence'"). The facts belie the existence of actual innocence in light of the videotape evidence, the footprint impressions, the inference resulting from possession of the recently stolen items and the stolen necklace located in the apartment petitioner was seen leaving on February 10. In light of the procedural default, grounds three and four do not warrant habeas relief.

II. <u>AEDPA Review</u>

Respondent submits that ground one (insufficient evidence) and ground two (ineffective assistance of trial counsel) do not survive section 2254(d) review. Section 2254(d) review applies only if the state court decided the merits of the federal claim. 28 U.S.C. § 2254(d); <u>see</u> <u>Hodge v. Mendosa</u>, 739 F.3d 34, 41 (1st Cir. 2013) (AEDPA sets out standards to review federal claim "'adjudicated on the merits in State court proceedings'"). Consequently, when a state court decision "does not address the federal claim on the merits," a federal "habeas court reviews such a claim de novo." <u>Junta v. Thompson</u>, 615 F.3d 67, 71 (1st Cir. 2010).

Section 2254(d), however, "'does not require a state court to give reasons before its decision can be deemed to have been

24

"adjudicated on the merits."'" <u>Johnson v. Williams</u>, 133 S.Ct.

1088, 1094 (2013). "When a federal claim has been presented to a

state court and the state court has denied relief, it may be

presumed that the state court adjudicated the claim on the merits

in the absence of any indication or state-law procedural

principles to the contrary." <u>Harrington v. Richter</u>, 562 U.S. 86,

99 (2011).

On appeal, petitioner presented the insufficient evidence

standard under the federal standard applicable under <u>Jackson v.</u>

<u>Virginia</u>, 443 U.S. 307, 318-319 (1979), and the equivalent state

standard under <u>Commonwealth v. Latimore</u>, 393 N.E.2d 370, 374-375

(Mass. 1979). In addressing the issue, the appeals court applied

the standard in <u>Commonwealth v. Latimore</u>, 393 N.E. at 374-375,

which, in turn, quotes <u>Jackson v. Virginia</u>, 443 U.S. at 318-319.

<u>Commonwealth v. Stevenson</u>, 2012 WL 1647863, at *1. "Because the

<u>Latimore</u> court adopted the governing federal constitutional

standard as the Massachusetts standard for sufficiency of the

evidence challenges" in <u>Jackson v. Virginia</u>, 443 U.S. at 318-19,

it is appropriate to assume that the appeals court addressed the

federal constitutional question on the merits. <u>Leftwich v.</u>

<u>Maloney</u>, 532 F.3d 20, 24 (1st Cir. 2008); <u>see</u> <u>Housen v. Gelb</u>, 744

F.3d 221, 225 (1st Cir. 2014).

With respect to the ineffective assistance of trial counsel

claim, petitioner presented the federal claim to the appeals

court. (Docket Entry # 31, S.A. 41-49). The appeals court

applied a state standard, <u>Commonwealth v. Saferian</u>, 315 N.E.2d

878, 883 (Mass. 1976), that is the functional equivalent of the federal standard in Strickland v. Washington, 466 U.S. at 687. See Lee v. Corsini, 777 F.3d at 57 ("state standard under Commonwealth v. Saferian, 366 Mass. 89, 96, 315 N.E.2d 878 (1974), is the 'functional equivalent' of the federal standard of Strickland v. Washington," 466 U.S. at 687). Accordingly, the appeals court addressed the federal claim on the merits within the meaning of section 2254(d).

Section 2254(d)(1) establishes "two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 404 (2000). Under the first category, "a state court determination is 'contrary to' clearly established law if the court 'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" Gomes v. Brady, 564 F.3d 532, 537 (1ˢᵗ Cir. 2009); accord Ramdass v. Angelone, 530 U.S. 156, 165-166 (2000) (decision is contrary to "clearly established federal law if it applies a legal rule that contradicts" the "prior holdings" of the Supreme Court or "reaches a different result from" a Supreme Court case "despite confronting indistinguishable facts"). With respect to both grounds one and two, there is no indication that the appeals court applied a rule that contradicts a Supreme Court rule or reached a result

different from a Supreme Court case with indistinguishable facts. The first category therefore offers petitioner no relief.

Under the second category, the federal court may grant the writ if the relevant state court decision "'involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. at 404-405 (quoting statute with ellipses omitted). An unreasonable application of clearly established federal law occurs if a state court decision "correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S.Ct. 1697, 1706 (2014); Cullen v. Pinholster, 131 S.Ct. at 1399. In order to obtain federal habeas relief, "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" White v. Woodall, 134 S.Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. at 102-103). Indeed, habeas relief under section 2254(d)(1) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." Id. at 1706-1707.

"Clearly established Federal law . . . includes only the holdings, as opposed to the dicta, of" Supreme Court decisions.

White v. Woodall, 134 S.Ct. at 1702 (internal brackets and quotations marks omitted); Yeboah-Sefah v. Ficco, 556 F.3d 53, 65 (1st Cir. 2009) (clearly established federal law refers to "'holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision'") (internal brackets omitted). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" Parker v. Matthews, 132 S.Ct. 2148, 2155 (2012), and "diverging approaches" to an issue in courts of appeals may "illustrate the possibility of fairminded disagreement." White v. Woodall, 134 S.Ct. at 1703 n. 3. "[F]actually similar cases from the lower federal courts may" nonetheless inform a determination particularly "when the relevant Supreme Court rule is broad and applies to a kaleidoscopic array of fact patterns." Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002); see also Coningford v. Rhode Island, 640 F.3d 478, 485 (1st Cir. 2011) (noting that lower court decisions "may not be used to fill a gap where" Supreme Court has "expressly declined to lay down a rule").

An objectively unreasonable application of the relevant jurisprudence differs from an incorrect or erroneous application of such jurisprudence. Williams v. Taylor, 529 U.S. at 411; accord Wiggins v. Smith, 539 U.S. 510, 520-521 (2003) ("state court's decision must have been more than incorrect or erroneous"). Under the unreasonable application prong, the

28

"habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. at 411; accord Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable--a substantially higher threshold").

Turning to ground one, the relevant inquiry under the Due Process Clause in habeas proceedings alleging insufficient evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. at 319; accord Herrera v. Collins, 506 U.S. 390, 401 (1993) (reiterating the "familiar standard" in Jackson).  "[T]he Jackson inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit."  Herrera v. Collins, 506 U.S. at 402 (emphasis in original).

The appeals court's decision falls well short of an unreasonable application of Jackson.  Viewing the evidence in favor of the prosecution necessitates a finding that the footprint impressions corresponded to the sneakers petitioner was

wearing when arrested on February 10. Forensic evidence
therefore linked petitioner to the crime scene. Lieutenant
Wareham saw petitioner leave the apartment on the evening of
February 10 where one of the stolen items was later recovered.
The vehicle he was driving that evening contained the blue
backpack with Caitlyn Meeks' initials. Petitioner fled the scene
when he crashed the vehicle. It is therefore reasonable to
conclude that the jury had sufficient evidence to find petitioner
guilty of breaking and entering the Meeks' residence in the
nighttime with intent to commit a felony. See Commonwealth v.
Farmer, 428 N.E.2d 143, 145 (Mass.App.Ct. 1981) (stolen goods in
defendants' possession, defendants' presence near burglarized
house and their furtive behavior provided sufficient evidence to
find defendants guilty of breaking and entering in nighttime with
intent to commit larceny). Hence, the appeals court's decision
was not an unreasonable application of Jackson.

In ground two, petitioner submits that trial counsel
rendered ineffective assistance by not objecting to the testimony
of Trooper Bruno regarding her recital of the footprint evidence.
Petitioner reasons that the testimony gave rise to an implicit
opinion by Trooper Bruno that the footwear evidence inculpated
petitioner. (Docket Entry # 40).

Strickland constitutes the "clearly established federal law
governing ineffective assistance of counsel claims" under section
2254(d)(1) review. Jewett v. Brady, 634 F.3d at 75 (citing
Williams v. Taylor, 529 U.S. at 390-91). In 2011, the Supreme

30

Court "reinforced the 'doubly' deferential standard that applies to a state prisoner's claims in a federal habeas petition that a state court has unreasonably applied the Strickland principles." Id. (quoting Harrington v. Richter, 562 U.S. at 105). Under Strickland, 466 U.S. at 687, a petitioner "must show that his attorney's performance was deficient and that he was prejudiced—deprived of a fair trial—as a result." Id.

Under the performance prong, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. at 687. As noted above, this "'highly deferential'" standard requires the petitioner "to 'overcome the presumption that the challenged action might be considered sound trial strategy.'" Pena v. Dickhaut, 736 F.3d at 605; Strickland v. Washington, 466 U.S. at 689. Consequently, the ineffective assistance prong is satisfied "'only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it.'" Pena v. Dickhaut, 736 F.3d at 605 (quoting U.S. v. Rodriguez, 675 F.3d at 56).

In the case at bar, Trooper Bruno did not render an opinion inculpating petitioner. She described the process of taking a footprint impression and dental casting in order to facilitate the jury rendering its own opinion about the evidence. She also

testified that a comparison is made by taking the known shoe and comparing it to one or more photographs of the footwear impressions and the casting. (Docket Entry # 31, S.A. 635-636, 640). The testimony did not transgress the trial judge's ruling or constitute inadmissible testimony. The trial judge also interrupted the testimony to make sure that Trooper Bruno would not render an opinion or discuss her actual comparisons and result. The trial judge thereby ensured that Trooper Bruno would not render an opinion and that her testimony would not overly influence or inevitably cause the jury to conclude that the footwear impressions were those of the sneakers worn by petitioner on February 10. An objection was therefore not necessary in light of the nature of the testimony and the trial judge's interruption of the testimony before Trooper Bruno rendered a comparison or an opinion.

Counsel does not render ineffective assistance by objecting to testimony that does not transgress a state evidentiary ruling. See Knight v. Spencer, 447 F.3d 6, 16 (1st Cir. 2006) ("Knight's counsel could not have rendered ineffective assistance in failing to object to alleged errors of state evidentiary law that" were nonexistent). Accordingly, the appeals court's decision that trial counsel was not ineffective was not an unreasonable application of Strickland. Petitioner's failure to show an unreasonable application of the performance prong foregoes the

need to address any unreasonable application of the prejudice
prong.

III.  State Law Review

Respondent moves to dismiss ground five as based solely on
state law.  He contends that the Rule 25(b)(2) motion raised an
issue of state law and that the appeals court addressed the
matter as an issue of state law.

It is well settled that section 2254(a) jurisdictionally
limits federal habeas relief to state convictions "in violation
of the Constitution or laws or treaties of the United States."
28 U.S.C. § 2254(a); see also 28 U.S.C. § 2241(c); Swarthout v.
Cooke, 131 S.Ct. 859, 861 (2011) ("'"federal habeas corpus relief
does not lie for errors of state law"'"); Brown v. O'Brien, 666
F.3d 818, 824 (1st Cir. 2012) ("[o]rdinarily, errors of state law
are not the basis for federal habeas relief").  Errors of state
law that do not rise to the level of a constitutional error "may
not be corrected on federal habeas."  Gilmore v. Taylor, 508 U.S.
333, 348-349 (1993) (O'Connor, J. concurring); Sawyer v. Smith,
497 U.S. 227, 239 (1990) ("availability of a claim under state
law does not of itself establish that a claim was available under
the United States Constitution"); accord Sanna v. DiPaolo, 265
F.3d 1, 12-13 (1st Cir. 2001) (habeas review unavailable for state
law error except "extreme cases" where state law or practice
betrays "fundamental principle of justice" under the Due Process
Clause).  Accordingly, whether petitioner met the standard under

33

Rule 25(b)(2) to reduce the verdict under state law, <u>see</u>
<u>generally</u> <u>Commonwealth v. Woodward</u>, 694 N.E.2d 1277, 1284-1285
(Mass. 1998) (discussing Rule 25(b)(2)), is not subject to
federal habeas review.

Petitioner argued for a not guilty finding or a guilty
finding on the lesser included offense of breaking and entering
in the daytime exclusively under state law.  On appeal,
petitioner argued that the trial judge applied an incorrect
standard under state law in deciding the motion.  In particular,
petitioner asserted that the trial judge decided the motion
solely on the insufficiency of the evidence without examining
other considerations that apply.  The fact that petitioner
advanced a separate claim of insufficient evidence citing <u>Jackson</u>
<u>v. Virginia</u>, 443 U.S. at 318-319, (Docket Entry # 31, S.A. 33-40)
reinforces a finding that petitioner presented the Rule 25(b)(2)
argument based solely on state law.

The appeals court upheld the trial court's denial of the
motion.  The appeals court's decision cited a single state court
decision, <u>Commonwealth v. Woodward</u>, 694 N.E.2d at 1285-1286
(noting that review of trial judge's Rule 25(b)(2) decision
"'"consider[s] only whether the judge abused his discretion or
committed an error of law"'"), and explained there was no
evidence that the trial judge applied an incorrect standard.
<u>Commonwealth v. Stevenson</u>, 2012 WL 1647863, at *2.  The court
concluded that, "[T]he judge was well within her discretion to
deny the motion based on both the strong evidence before the jury

and the absence of any indication that the jury's verdict was not 'consonant with justice.'" <u>Id.</u> (quoting <u>Commonwealth v. Woodward</u>, 694 N.E.2d at 1284). Inasmuch as ground five presents a state law claim, federal habeas review is not available.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[12] that the motion to dismiss (Docket Entry # 37) be **ALLOWED** and that the petition be dismissed with prejudice.

    /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[12] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. <u>See</u> Rule 72(b), Fed. R. Civ. P. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.